IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST SAINT LOUIS DIVISION

| | |
|---|---|
| ALYSSA MARIE PRATZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOD SUPER FAST PIZZA, LLC d/b/a MOD PIZZA, a Delaware limited liability company,<br><br>Defendant. | Case No. 3:21-cv-00757<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alyssa Marie Pratz ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant MOD Super Fast Pizza, LLC d/b/a MOD Pizza, a Delaware limited liability company ("Defendant") for violating the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq* ("BIPA").  Plaintiff alleges the following upon personal knowledge as to Plaintiff's own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys:

## NATURE OF THE ACTION

1. Defendant operates restaurants throughout Illinois, including a location at 2300A Troy Road, Edwardsville, IL 62025.

2. Since 2008, it has been illegal in Illinois to collect an individual's biometric information or identifiers—such as a fingerprint, voiceprint, or faceprint—without the individual's informed, written consent.  740 ILCS 14/15(b).

3. Despite the substantial privacy risks created by the collection and storage of biometric data, and the decade-old prohibition on collecting and retaining biometric data in

1

Illinois without informed consent, Defendant used a biometric time-tracking system that requires workers at Defendant's Illinois locations to use their fingerprints as a means of authentication. When Defendant's Illinois workers begin their time with Defendant, Defendant required them to scan their fingerprints into a time management database.

4. Defendant's scanning and retention of its workers' fingerprints without informed consent was clearly unlawful in Illinois.

5. Plaintiff brings this Complaint seeking an order (i) declaring that Defendant's conduct violated BIPA, (ii) requiring Defendant to cease any remaining unlawful activities described herein and destroy any biometric data it may still have that was unlawfully collected, and (iii) awarding Plaintiff and the Class statutory damages of $1,000 for each negligent violation of BIPA and $5,000 for each violation found to be willful or reckless, plus their attorneys' fees and costs.

## PARTIES

6. Plaintiff Alyssa Marie Pratz is a natural person and a citizen of the State of Illinois.

7. Defendant MOD Super Fast Pizza, LLC d/b/a MOD Pizza is a limited liability company existing under the laws of the State of Delaware, with its headquarters and principal place of business located at 2035 158th Court NE, Suite 200, Bellevue, WA 98008. Defendant conducts business throughout the State of Illinois and the District.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Class is a citizen of a state different

from Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under the subsection apply to this action.

9. This Court has personal jurisdiction over the Defendant because Plaintiff's claims arise out of, or relate to, Defendant's contacts with Illinois.

10. Venue is proper in this District because a substantial part of the events giving rise to Plaintiff's claims occurred in, were directed to, and/or emanated from this District. 28 U.S.C. § 1391(b).

## COMMON FACTUAL ALLEGATIONS

### *The Biometric Information Privacy Act*

11. Enacted in 2008, the Biometric Information Privacy Act regulates two types of biometric data. First, BIPA regulates any "biometric identifier," which means "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and specifically excludes a lengthy list of specific identifiers. 740 ILCS 14/10. Second, it regulates any "biometric information," which "means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.* Biometric information "does not include information derived from items or procedures excluded under the definition of biometric identifiers." *Id.*

12. BIPA regulates the entire lifecycle of biometric data, from capture and collection to use and disclosure.

13. As to the origination of biometric data, BIPA provides that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric

information is being collected or stored; (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." 714 ILCS 14/15(b).

14. BIPA likewise restricts the disclosure of biometric data, providing that "[n]o private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure; (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or biometric information or the subject's legally authorized representative; (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction." 740 ILCS 14/15(d).

15. When it comes to exploiting biometric data, BIPA creates even stricter proscriptions. Reflecting an intent to preclude the formation of a market for biometric data, BIPA provides without exception that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15/(c).

16. To facilitate the informed notice and consent provisions described above, BIPA also requires that any private entity in possession of biometric identifiers or information must publish a written policy "establishing a retention schedule and guidelines for permanently

destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

17.   Finally, given the persistent nature of biometric data and the increased risks that accompany their misuse, BIPA requires that any entity possessing biometric identifiers or information "(1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and (2) store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." 740 ILCS 14/15(e).

18.   To remedy the serious but often intangible harms that accompany invasions of biometric privacy rights, BIPA creates a private right of action authorizing "[a]ny person aggrieved by a violation of" the statute to sue and recover for each violation liquidated damages of $1,000, or $5,000 in the event of an intentional or reckless violation, plus attorneys' fees, costs, and appropriate injunctive relief. 740 ILCS 14/20.

### *Defendant's Disregard for Workers' Privacy*

19.   Despite the recognized danger of using biometric data, Defendant used a time-tracking system that required its workers to use their fingerprints as a means of authentication. Unlike a traditional timeclock, workers were required to use their fingerprints to "punch" in and out of work.

20.   Defendant failed to inform its workers of the extent and purposes for which it collects their biometric data and whether the data would be disclosed to third parties.

5

21. Defendant similarly failed to maintain a written, publicly available policy identifying its retention schedule for biometric data or providing guidelines for permanently destroying its workers' fingerprints when the initial purpose for collecting or obtaining the workers' fingerprints is no longer relevant, as required by BIPA. Workers who leave the company, as Plaintiff did, do so without any knowledge of when their biometric identifiers will be removed from Defendant's databases, if ever.

22. Defendant's workers were likewise never told what might happen to their biometric data were Defendant ever to go out of business.

23. Because Defendant neither published a BIPA-mandated data-retention policy nor disclosed the purposes for which it collected biometric data, Defendant's workers have no idea whether Defendant sells, discloses, or otherwise disseminates their biometric data. Nor were Plaintiff and the putative Class told to whom Defendant discloses their biometric data, or what might happen to their biometric data were Defendant to merge with another firm or go bankrupt.

24. On top of its failure to notify workers and the public of the basics of its collection, use, retention, and protection of biometric data, Defendant failed to obtain the written release required by BIPA before collecting its workers' biometric data.

25. Defendant's failure to publish a biometric data-retention policy or obtain written releases from its workers prior to the collection of their fingerprints violated BIPA.

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF**

26. Plaintiff Alyssa Marie Pratz worked at Defendant's Edwardsville location in Illinois during the Class Period.

27. Defendant required Plaintiff to use a fingerprint-based timekeeping system. Thus, every time Plaintiff clocked in or out of a shift or for a meal break, or when accessing a

restaurant's point of sale system, Defendant captured, collected, or otherwise obtained Plaintiff's biometric identifier.

28. Defendant never informed Plaintiff of the specific purposes or length of time for which Defendant collected, stored, and used Plaintiff's fingerprints.

29. Defendant did not obtain a written release authorizing the collection, capture, other obtainment, or subsequent disclosure of Plaintiff's biometric identifier.

30. Defendant does not make publicly available, and has not made publicly available, any biometric data-retention policy, nor has Defendant informed Plaintiff whether it will ever permanently delete Plaintiff's fingerprints.

31. Plaintiff was continuously and repeatedly exposed to the harms and risks created by Defendant's violations of BIPA.

## CLASS ALLEGATIONS

32. Plaintiff brings this action individually and on behalf of the following class ("the Class") pursuant to 735 ILCS 5/2-801:

> All individuals who work or worked at a MOD location in the State of Illinois and who registered for or used a finger scan timekeeping system in connection with their employment with MOD from June 30, 2016 to June 30, 2021.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

33. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but on information and belief Plaintiff understands the number to be greater than 1,100 class members. It is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of individuals within the Class definition. The exact number of Class members can be easily determined from Defendant's records.

34. **Commonality and Predominance**: Questions of law and fact common to the claims of Plaintiff and the Class predominate over any questions that may affect individual members. Those common questions include:

   a. Whether Defendant collected or captured the Class members' biometric identifiers or information;

   b. Whether Defendant maintained a publicly available retention schedule for biometric identifiers or information;

   c. Whether Defendant informed the Class members that they would collect or capture the Class members' biometric identifiers or information;

   d. Whether Defendant informed the Class members of the purpose for which they would collect their biometric identifiers or information, or the duration for which they would retain that data; and

   e. Whether Defendant obtained the written release required by BIPA to collect or capture, use, and store the Class members' biometric identifiers or information.

35. **Typicality**: Plaintiff's claims are typical of the claims of all the other Class members. Plaintiff and the Class members sustained substantially similar damages as a result of Defendant's uniform wrongful conduct, based upon the same interactions that were made uniformly with Plaintiff and the Class.

36. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are

committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other Class members.

37. **Policies Generally Applicable to the Class:** Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class.

38. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class members will likely be relatively small compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for individual Class members to obtain effective relief from Defendant's misconduct. Even if Class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

39. Plaintiff reserves the right to revise the Class Definition and Class Allegations based on further investigation, including facts learned in discovery.

### FIRST CAUSE OF ACTION
### Violation of 740 ILCS 14/15
### On Behalf of Plaintiff and the Class

40. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

41. Defendant is a Delaware limited liability company and is therefore a "private entity" under 740 ILCS 14/10.

42. Every time Plaintiff and the Class members clocked in or out of a shift or for a meal break, or when accessing a restaurant's point of sale system, Defendant obtained a scan of their fingerprints. Those scans mapped the geometry of Plaintiff's and the Class members' fingers, and Defendant used that geometry to identify them as they clock in and out of work. Defendant therefore collected, captured, received through trade, or otherwise obtained Plaintiff's and the Class members' biometric identifiers and biometric information.

43. Prior to collecting, capturing, receiving through trade, or otherwise obtaining Plaintiff's and the Class members' biometric identifiers and biometric information, Defendant did not inform Plaintiff or the Class members or their legally authorized representatives that their biometric identifiers and information would be collected or stored.

44. Prior to collecting, capturing, receiving through trade, or otherwise obtaining Plaintiff's and the Class members' biometric identifiers and biometric information, Defendant did not inform Plaintiff or the Class members or their legally authorized representatives of the specific purpose and length of time for which their biometric identifiers and information were being collected, stored, and used.

45. Prior to collecting, capturing, receiving through trade, or otherwise obtaining Plaintiff's and the Class members' biometric identifiers and biometric information, Defendant did not receive a written release from Plaintiff and the Class members or their legally authorized representatives authorizing the collection, capture, receipt through trade, or other obtainment and use of their biometric identifiers or information.

46.     Despite collecting Plaintiff's and the Class members' biometric identifiers and biometric information, Defendant failed and continues to fail to maintain a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with the private entity, whichever comes first.

47.     By capturing and collecting, storing, using, and/or disclosing Plaintiff's and the Class members' biometric identifiers and information as described herein, Defendant violated Plaintiff's and the Class members' rights to privacy and property in their biometric data under BIPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that this Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing Plaintiff's lawyers as Class Counsel;

B.     Declaring that Defendant's actions, as described above, violate 740 ILCS 14/15;

C.     Awarding liquidated damages under 740 ILCS 14/20 of $1,000 for each negligent violation of BIPA and $5,000 for each violation found to be willful or reckless;

D.     Awarding injunctive and other equitable relief as necessary to protect the Class, including an order requiring Defendant to stop its unlawful collection of biometric data and to delete any such data that was unlawfully obtained;

  E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

  F. Awarding Plaintiff and the Class pre- and post-judgment interest; and

  G. Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date: June 30, 2021       **ALYSSA MARIE PRATZ,** individually and on behalf of all others similarly situated,

/s/ Alex J. Dravillas
  One of Plaintiff's Attorneys

Benjamin J. Whiting (*pro hac vice* to be sought)
 ben.whiting@kellerlenkner.com
Alex J. Dravillas
 ajd@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220